This morning, the first case on our docket is agenda number 14. Carmen Mercado et al. v. S&C Electric Co. No. 129526. Counsel for the appellant, are you prepared to see? Good morning, your honors. Counsel, may it please the court. Margaret Truesdale on behalf of plaintiffs' appellants Carmen Mercado and Jorge Lopez. The appellate court's decision dismissing plaintiffs' Illinois minimum wage law claims should be reversed on two bases. First, the appellate court erred in holding that payments not based on hours worked could be excluded from the regular rate used to calculate an employee's overtime. And second, the appellate court erred in determining that under the Illinois minimum wage law, an employer could underpay its employees and still completely avoid any statutory penalties, including travel damages and 5% monthly penalties, by relatedly paying mere single damages. May I stop you there and ask a procedural question? Yes. You point out there are two issues here. I would have to say as I read your briefs and both briefs and certainly some of the cases that I've read, it feels like summary judgment. And that's why I wanted to talk about procedure for a moment. But in fact, what occurred here, as we know, is there was a motion to dismiss, a combined motion to dismiss filed by defendants on two bases. Code of Procedure 2615, which challenges the sufficiency of the pleading, and then 2619, which for purposes of the motion, concedes sufficiency and argues that the claim should be defeated because of affirmative matter, something outside of the complaint. And we know that in terms of how this is all supposed to work, Supreme Court Rule 191 describes what kind of affidavit is appropriate in a 2619 case and certainly not a 2615 motion. And I have to say I've been very confused about the use of this affidavit on the argument of the 2615. So the 2615 motion dealt with the regular rate, as you were just describing. The 2619 motion dealt with the payments that were made later. The trial court granted the 2619 on this affirmative matter idea, but denied the 2615. We know that the denial of a 2615 is an interlocutory non-final order. The Constitution gives the jurisdiction to the appellate court only to hear final orders unless there's a Supreme Court rule. I've not heard any discussion of any Supreme Court rule that would grant authority or, excuse me, jurisdiction to the appellate court. My question, did the appellate court have jurisdiction to review the findings of the court in the 2615 denial of the motion to dismiss? Yes, Your Honor. Our understanding is that the appellate court did have jurisdiction. The order of the circuit court dismissed the case with prejudice. On the 2619. Yes. Well, let me rephrase this. My understanding is that the circuit court dismissed the appeal under, based on the pleadings. It granted the 2615 motion? Yes, based on the pleadings. Because in the pleadings, we did concede that there were these adjustment payments made. And so the denial of the, excuse me, the dismissal of the case was based on this idea that these adjustment payments, which were alleged on the face of the complaint, mooted the plaintiff's claims and thus resulted in the dismissal of their claims under the Illinois minimum wage law. So the circuit court, with respect to the affidavit, it struck only the portion of the affidavit. For the 2619 issue, it struck only the portion of the affidavit that talked about whether the bonuses at issue were based on hours worked. The affidavit of Aurelia Richards said that the bonuses alleged in the complaint were not measured by or dependent on hours worked and thus were properly excluded from the regular rate. The circuit court determined that that was a legal conclusion. It was not appropriate in an affidavit and struck that. And so the circuit court determined that it could not make a factual finding based on the affidavit or anything else as to whether the bonuses at issue in this case were based on hours worked. So that remains an open question. And this court, if it did side with S&C with respect to the reading of the gift exclusion, it would need to remand to the circuit court for a factual finding in the first instance as to whether these bonuses were in fact measured by or dependent on hours worked. Does that clarify Your Honor's question? If we were to agree with you and reverse the dismissal under 2619, what would happen was it would go back to the trial court for development of discovery and perhaps more motions, perhaps a summary judgment motion later on. Is that your position? Yes. Yes. Unless the court has a contrary preference, I'll begin discussing the gift exclusion issue and then address the penalty provision issue. S&C's and the appellate court's reading of the gift exclusion is incorrect for three primary reasons. First, the plain language. Their reading conflicts with the language of 210410A itself and cannot be reconciled with the regulation as a whole. Second, it is contrary to the Illinois Department of Labor's interpretation. And third, it creates a loophole in the Illinois minimum wage law that enables gamesmanship by employers to dramatically reduce overtime payments. Counsel, let me ask you a question about the plain language of the statute. If the code excludes only gifts, are the words for other amounts superfluous? It is not. And the reason for that is that the gift exclusion, the phrase such as in the gift exclusion introduces a series of examples. Payment of gifts made at holidays is one such example. And other amounts not measured by or dependent on hours worked is another illustration of the types of payments that would qualify as a gift. Not measured by or dependent. Yes. I'm wondering, are you inserting the word gifts? Like, are you reading it some space as gifts such as those made at holidays or other gift amounts that are not measured by or dependent on hours worked? It seems like you're inserting an additional gifts in there. I do think that if you insert the word gift in the regulation, it continues to read as it should be read. But inserting the addition of that word gift a second time is not necessary to understand that other amounts that are not measured by or dependent on hours worked is an additional illustration of the type of gifts that could be excluded from the regular rates or the type of payments that would qualify as gifts. Not measured by or dependent on hours worked is clarifying language. It helps to distinguish between payments that are gifts and payments that are not gifts. And it educates employers that they cannot take a payment that is based on hours worked and try to disguise it as a gift. Importantly, it's not just the language of Section 210.410A that supports the plaintiffs and the Department of Labor's reading. It's also the regulatory context. And to conduct a textualist reading of the regulation, the court must read the regulation as a whole. This is crucial, yet the appellate court's reading is in conflict with the regulatory context. If the gift exclusion excluded from the regular rate all payments not measured by or dependent on hours worked, that would mean that an employer could exclude from the regular rate any payments made on a piece rate, salary, commission, or per job basis. Because these types of payments are not measured by or dependent on hours worked. But from Section 210.420 and Section 210.430 of the very same regulation, we know that these types of payments must be included in the regular rate. That piece rate payments, commission payments, salary payments, and per job payments must, in fact, be included in the regular rate. The appellate court's reading of the gift exclusion is in direct conflict with these other provisions of the regulation. In addition, the appellate court's reading would render superfluous the subsection that immediately follows Section 210.410B. Excuse me, Section 210.410A. It would conflict with Section 210.410B. This subsection excludes from the regular rate payments made for occasional periods when no work is performed due to vacation, holiday illness, et cetera. These are clearly not based on hours worked. It says right in there that these are payments for periods when no work is performed. So under the appellate court's reading, this provision would be completely unnecessary. The appellate court's reading even creates a redundancy problem within the gift exclusion itself with the phrase sums paid as gifts. The legislature would not need to exclude from the regular rate sums paid as gifts if it was already excluding all sums not based on hours worked. In addition, the appellate court's reading doesn't fit with the structure of Section 210.410. This regulatory section has seven subsections, A through G. Each one of the seven focuses on one type of remuneration that can be excluded from the regular rate. And S&C is asking for an eighth exclusion. It's arguing that the Illinois Department of Labor stuffed two exceptions into one paragraph, that Section 210.410A excludes both gifts and creates a completely separate exception for sums not measured by or dependent on hours worked. That's not the plain or natural reading of Section 210.410. If the Illinois Department of Labor wanted to exclude to create such an enormous carve-out from the regular rate, it would have at least drafted a separate paragraph to do that. Importantly, the appellate court's reading is contrary to the Illinois Department of Labor's interpretation. The Illinois Department of Labor is the very agency that drafted and enacted the gift exclusion. And the Illinois Department of Labor interprets the gift exclusion as the plaintiffs do, that it is limited to sums paid in the nature of gifts. This court is found to defer to the Illinois Department of Labor's reading unless it deems it utterly unreasonable. And for these reasons I've already discussed, the Illinois Department of Labor's reading is more than reasonable. The appellate court's reading of the gift exclusion also creates a loophole in the Illinois minimum wage law. It allows employers to slightly reduce their overtime obligations by shifting hourly compensation to a non-hourly format. For example, an employer that previously paid its employees $25 an hour and $37.50 for overtime, which would be time and a half, that employer could now pay its employees $14 an hour plus $88 a day for each eight-hour work day based on satisfaction of certain performance and safety metrics. In that case, the employee's straight pay would still be the same, $25 an hour, but the overtime rate would drop to an alarming $21 an hour. This would allow employers to completely subvert the two key purposes of overtime, which the appellate court articulated in Haynes v. True Green Corporation. And those are that employers hire more employees and spread employment out among employees and pay them at the regular rate. Or if an employer prefers paying overtime, to at the very least compensate employees for their very real wear and tear of working over 40 hours in a work week. Unless the court has any additional questions about the first issue, the gift exclusion issue, I'll move on to the second issue regarding the penalty provision. The Illinois legislature carefully crafted the Illinois minimum wage loss penalty provision to give employers an incentive to comply. SNCs and the appellate court's reading of the penalty provision completely eliminates any incentive for employers to comply. They would allow employers to effectively take out an unauthorized interest-free loan on their employees' wages for months or even years. In addition, the appellate court's and SNC's interpretations of the penalty provision find no support in the statutory text and conflict with the Illinois Department of Labor's interpretation. I'll begin with the text. The Illinois minimum wage loss penalty provision provides that if any employee is paid less than he is owed under the act, then he is entitled to triple damages and 5% monthly penalties. That means that the violation occurs when the employer underpays him. His claim accrues at the moment of underpayment, and it cannot be mooted by belated payment of mere single damages. Nothing in the text of the Illinois minimum wage loss penalty provision supports SNC's reading. Nowhere, nowhere does it say that triple damages and 5% monthly penalties are due only if the employer is sued before paying back the initial underpayment. It's worth noting that SNC did not even come up with this current creative reading of the penalty provision until its appellee brief in this court. In the circuit court and the appellate court, it pushed a different but also incorrect reading of the penalty provision, that the penalty provision has no payment deadline whatsoever, so that an employer could underpay its employees and pay them back at any moment, even after a lawsuit is filed, and still extinguish the employee's claim to triple damages and 5% monthly penalties. That was the reading that the circuit court and the appellate court adopted, but now even SNC apparently has abandoned that position. Importantly, the Illinois Department of Labor reads the penalty provision the same way that plaintiffs do. Because the Illinois Department of Labor is the agency charged with administering and enforcing the Illinois minimum wage law, this court is bound to defer to its reasonable interpretation of the penalty provision. Put another way, this court would have to find that the Illinois Department of Labor's reading of the penalty provision is completely unreasonable before it could reject it and adopt the appellate court's or SNC's reading. But for the reasons I've already discussed, the department's interpretation of the penalty provision is eminently reasonable. It is the only reasonable reading. In addition to finding no support in the statutory text and conflicting with the department's reading, SNC's and the appellate court's readings lead to highly problematic consequences that can't be what the legislature intended. Without triple damages or 5% monthly penalties, an employer's incentive is, in fact, to underpay its employees. Even if down the road the employer finds that it must pay because, for example, it's threatened with a lawsuit, it still comes out ahead. The employer can hold on to the money, make a return on the money, and if it finds that at some point it must pay the money, it owes only what it owed in the first place, no more. And this cannot be what the legislature envisioned in carefully crafting this penalty provision to protect employees, many of whom live paycheck to paycheck, people who have to pay their living expenses like groceries, gas, and rent, people whose landlords are not going to be sympathetic if their overtime is paid late. It's important to note here that what SNC is asking for is an exception. Late payments come with penalties in all kinds of situations, not just here. With taxes, parking tickets, if you pay late, you pay more, and it's no different here. Unless the court has any questions about the penalty provision or anything else, we would ask that this court correct the serious errors in the appellate court's interpretation of the penalty provision and the gift exclusion, reverse the dismissal of the plaintiff's Illinois minimum wage law claims, and remand to the circuit court for further proceedings. Thank you. May it please the court, counsel? Let me begin by just quickly, if I may, addressing Your Honor's question regarding jurisdiction. We agree that given the final judgment that all issues before the trial court were properly on appeal, including two questions. Counsel, will you please state your name for the record? Michael Scodro on behalf of SNC Electric, Your Honor. So all orders that the court entered, including denial of the motion to dismiss, becomes filed and appealed? That's our view, Your Honor, yes. Both the 615 and 619 issues that were raised, and indeed both questions presented, are properly before this court. And we would urge this court to resolve the case on what we believe is the more straightforward of the two, frankly, which is the straightforward reading, plain reading of 410A. And as co-counsel began. So just help me figure out what this would look like. So motion to dismiss based on the late payment. And in terms of the sufficiency of the complaint, there was a motion to dismiss denied. So what happens if we were to reverse the dismiss under 2619? So if Your Honor were to dismiss, and it may help to break down by issue. If the court were to reverse and conclude, for example, that the adjustment payments were not, I think that's to Your Honor's point. Under 2619. Exactly, exactly, Your Honor. That the adjustment payments were not, did not have the effect of extinguishing the claim by eliminating a statutory element, as we argue in our brief. And at that point, the argument that, or the position on Section 410A, that it excludes non-hourly payments, that holding remains in effect in the appellate court. It would go back down, but with that holding in effect. And if there were any concern, the appellate court goes on to say that paragraph 2 of the affidavit ought to be credited under Rule 191, based on the personal knowledge that Richards had in signing that affidavit. But if there were any concern, that could be re-evaluated in theory. Under issue 615. In theory. There's never, I should add, there's never been any contest here by either side, including plaintiffs, that it was inappropriate for either court to consider paragraph 2 in connection with the 410A resolution. And so that's not a jurisdictional issue, of course. So to the extent there's concern on the court's part that the affidavit should not have been considered in connection with the interpretation of Section 410A, that has not been a challenge raised at any point in the litigation by plaintiffs. If, though, that is the court's concern, we would urge the court to, because for the, given the importance of the issue, to resolve the question of how best to interpret 410A. And then the lower court could, of course, evaluate the affidavit in the context of a 619 or in a later procedural posture. Just one more time. Of course. Through 615, it doesn't matter if it's a non-final order. Correct, Your Honor. Because the court entered judgment, entered final judgment, in favor of the defendants, the entire judgment is amenable to appellate jurisdiction. That is our, and to that extent, I think, we're. And the judgment was based upon the late payments, not on the interpretation of the statute. The trial court's judgment ultimately resolved the second issue, what we would consider the second issue, Your Honor. That is the effect of the catch-up payments. That's correct. Not on the, although the appellate court obviously offered, and both courts offered, the interpretation of 410A, which we think is eminently correct here. And we think is actually an easy resolution of this issue because, to Your Honor's earlier question, their interpretation does indeed require either an omission of existing language or the addition of new language. Our reading is very straightforward. Sums paid, and that's described as gifts such as those made at holidays, or other amounts, other amounts being in parallel with sums, other amounts that are not measured by or dependent on hours worked. They're not two independent, unrelated ideas being crammed into one provision, as counsel suggests. On the contrary, as we explain in our brief, gifts is the most obvious example of an amount that is not measured by or dependent on hours worked. And so it's understandably included. In the same way, if they had said cars and all other vehicles with motors, well, cars may come to mind first as the most obvious example of a vehicle with a motor. But it doesn't mean that everything thereafter is limited to cars. On the contrary, if it has a vehicle with a motor, and in this case the equivalent is, if it's measured by or dependent on hours worked, or if it's not measured by or dependent on hours worked, then it doesn't fall within this phrase. And so that sort of easy parallel reading uses every word once, assigns meaning to every word, and doesn't omit words. To Your Honor's earlier question, yes, they are omitting other amounts, because their meaning would be sums paid as gifts that are not measured by or dependent on hours worked. That omits the phrase Your Honor asked about, and that's the meaning they suggest. To Your Honor's second question, that phrase actually comes from their appellate briefs. We quoted in our brief before this court, gifts made at holidays or gifts in other amounts that are not measured by or dependent on hours worked. That's actually what they included in their brief to explain how they were construing 410A. And so either one gets to where they want to go, but neither is what it says. What do we do with the agency's interpretation of this language? Well, Your Honor, a couple of points regarding deference on 410A. First, neither the State nor plaintiffs suggest at any point in their briefing or before this court that the State Department of Labor or the AG's office has ever argued or taken the position that 410A means what plaintiffs currently say it means. They rely on the landmarks decision, which does say it's a case where an amicus brief by a State agency, Department of Natural Resources in that instance, embodied, reflected, explained the position that had been the longstanding position of that department, of DNR. And the court said that's fine. This is not coming for the first time in an amicus brief. This reflects the longstanding position known to the world taken by that agency. We have the exact opposite here. We have a position taken for the first time in an amicus brief. Contrary to the easy reading of this provision that comes as a surprise to employers that appears for the first time in an amicus brief. So I don't believe that the landmarks decision on which they rely, which involved an amicus, gets the deference in this case. And even if it did, this Court has repeatedly held, and there's no dispute on this point of law, the Court has repeatedly held that anything that is at odds with the plain language of a statute is not, the deference, if there is deference, that deference is overcome. And so for both of those reasons here, Your Honor, we don't see deference as playing any role in the proper interpretation of Section 410A. And along those lines, Your Honor, I would add that the regulations themselves talk about, and this is 56 Illinois Administrative Code 210.120, cited in the briefs, and this refers to the idea that federal regulations can be looked to for guidance. And those, we agree that they can be looked to for guidance. That is to say, the drafters, DOL, when it drafted the regulations, knew expressly that it was looking at Department of Labor for guidance, but they didn't take verbatim the relevant Department of Labor regulation that had been in place for decades when Section 410A was drafted. Instead, they took very different language. Department of Labor in the U.S. went out of its way to make clear that the exception is about gifts, gifts, gifts, gifts. And as we quote in our brief, it could not be as painstaking, it could not be clearer. That language is abandoned by Department of Labor in this case, and it's abandoned in favor of a reading that is very simple. Sums paid as gifts, such as those made on holidays, are other amounts not measured by or dependent on hours worked. They also make the point, Your Honor, that amounts measured or not measured by or dependent on hours worked is merely an illustration. But if that's true, as we say in our brief, and the response in reply, I'm not sure completely gets you there. As we pointed out in our brief, if amounts not measured or dependent on hours worked is merely an example of a gift, then there must logically be something that is a gift that is measured by hours worked. And I'm hard-pressed to come up with an example of a gift measured by the number of hours worked. They've also made the point that this reading would somehow give rise to abuse. But on the contrary, as the Chamber of Commerce amicus brief makes clear, the U.S. Department of Labor understands that if you go too far, that there is a balance here. You don't want to disincentivize employers from providing additional payments because they're going to then have a 1.5 multiplier effect when it comes to overtime. On the contrary, we want to encourage, as the U.S. Department of Labor has been doing by expanding the scope of things that we are encouraging employers to do by excluding them from regular rate of pay. So that's really the proper, I think we have to bear in mind that.  Yes, ma'am. So are you suggesting that we should discount the interpretation of our department, the state's position on this in favor of the federal government's position? On the contrary, Your Honor. We're urging the court to disagree with the reading offered in the amicus brief, in this case, by the state, not in favor of federal government. On the contrary, the federal governments have done something, as I mentioned, very different with the gift exception. In fact, so different that it suggests there was intent on the part of the Illinois Department of Labor to do something different here and to have the meaning that we have described. I'm only referring to recent developments in the federal Department of Labor, as articulated in the chambers amicus brief, merely to show that as even the federal Department of Labor has recognized, there are advantages to employees to exclude certain categories of payment from the regular rate of pay in order to incentivize employers to provide those forms of payment. And so here, I think it, I want to just counteract their position that somehow this would open the door to some sort of abuse. On the contrary, it would incentivize employers to provide precisely the kinds of bonuses that were provided here. And I should add that if there were concern about abuse on the part of employers, that concern exists regardless of the reading this court gives to Section 410A. Section 410C already excludes, C1, I believe, already excludes all payments that are discretionary. Well, if an employer wants to abuse the system, well, they can just start saying that all bonuses are now discretionary. So it's not as if a ruling on 410A somehow opens a door that isn't already open. What it does is consistent with a movement in a slightly different context by the U.S. Department of Labor. It incentivizes providing these additional payments. I should also note that there is a claim that somehow Section 430 is inconsistent with the appellate court and the trial court's reading of Section 410A here. And that's simply not true. As we explain in our brief, 430 is perfectly in step with our reading of Section 410A, the plain reading of Section 410A here. And that's because what 430 does is it says if you are employed or employed solely, in one instance, they use different language, as on a, say, piece rate basis or commission basis, under those circumstances, in order to get your regular rate of pay, because things have to be converted to hourly in order to do all of this calculus for overtime, then we convert them to an hourly rate. And so those types of piece rate payment, of course, those are hourly. They are measured by, in the words of Section 410A, they are measured by hours, by operation of Section 430. How does that work? I haven't had a chance to look at that other section, and it was not in any of the briefs. How is that supposed to work, the piece being converted? Thank you, Your Honor. So to take piece rate, for example, this is Section 430B. It involves piece worker. It talks about when you are employed, so on a piece rate basis, which suggests it's not some one-off sort of bonus. This is your, the method of your regular rate of pay is piece rate. What happens, that's an employee who, you know, per project completed gets a certain fixed amount. And so what the, what 430 says, look, we have to figure out how to convert this into overtime. We don't have an overtime statute that says if you complete more than 10 projects, suddenly you're in overtime. Our overtime statute is about 40 hours a week. So we have to know what this means in terms of rate per hour. And so what it says is, let's take the week, let's take the number of hours worked to complete. You're recognizing you weren't paid hourly, you were paid by project. Let's take that sum you were paid for the week, the number of hours it took you to do it, divide, and that is your hourly rate for purposes of then deciding what your overtime minimum rate needs to be. So that's, it's a conversion, but it also has the effect here of taking care of the concern raised by plaintiffs that somehow by construing Section 410A to exclude payments based on measured by or dependent on hours worked, that somehow that had the effect of taking piece rate workers or commissioned workers or salaried workers and somehow taking all of their base pay out of the definition of regular rate of pay. And that simply isn't the case. Under your example, you said you would determine how many pieces they made in a week and divide that, and that would be the hourly rate, but what snapshot, what week are we using? How would, I'm still struggling to figure out, you know, do you look at an average then of everybody else's work to say, well, you made 72, other workers made 70. So for these two, we're going to consider that overtime. I'm really struggling with how you would make that. Sure. So as I understand it, and this goes a bit into the minimum wage, the other aspects of the act here, but my understanding is the way it goes is you can actually define a work week so long as it runs, there's a default that runs from basically Sunday at midnight to Sunday at midnight, but the employer can define a work week so long as it's seven days to the minute, and that to calculate whether someone is working overtime, they see how many hours they've worked, and if you've exceeded 40, then you're in overtime. To calculate the rate of overtime pay, the minimum rate of overtime pay, what's needed at that point is this Section 430 analysis because overtime is 1.5 times your weekly rate, so I think my understanding is you take that pay period, you figure out what the rate of hourly pay would have been doing the math under 430, and then use that times 1.5 to figure out what your minimum overtime rate for that week would be. That's how I understand it to work, but the critical element here is that by virtue of that conversion under 430, it eliminates this concern that somehow piece rate workers are having their base salary excluded from the definition of regular rate of pay under Section 410, and if I could add just one more point on this, and I do just want to make clear, there is also, even if you somehow thought that this entire provision is all about gifts, it goes on to say that gifts are things that aren't measured by or dependent on hours worked, so even if you buy into the idea, and we don't, but we have a paragraph in our brief explaining this, even if you somehow buy into the idea that all 410A talks about is gifts, well, gifts are defined at the back end of that sentence as items that are not measured by or dependent on hours worked. We land in exactly the same place. Again, we think the easier reading is to say sums, other amounts are two parallel things. One is an obvious example of the latter rule, but even if you agree with the notion that somehow gifts is the centerpiece of this entire section, then you still land respectfully in the same place that we're saying. It still has to be measured by or dependent on hours worked. Now, I recognize that I'm nearly out of time, and we have the second issue. For all the reasons we've said in our brief, Section 12A is easiest read as allowing not payment, not a catch-up payment any time before judgment is entered in the case, but rather before suit is filed, and as we explained, that is in step with the ERISA examples that we include, where similar language in the ERISA Act is construed to have the same meaning and to avoid liquidated damages by a voluntary payment pre-lawsuit, which is what we're doing. I have one last question, too, if may I, Chris. Can you respond to your opponent's comment that that's essentially allowing the employers to use the salaries of their employees as an interest-free loan? Thank you, Your Honor. This idea that it creates a perverse incentive, I'm happy to have the opportunity to respond to that. As we point out in our brief, the incentive is actually to the contrary. Under our reading, there's an incentive to find and pay rather than wait to see if there might be one day be a lawsuit, or, you know, sorry, find and pay rather than waiting to see if there might be a lawsuit. If we're permitted to do what S&C did here, which is to sua sponte, go to their employees and provide that additional money, the incentive is to do that because then the case is, any potential claim is over. If instead the rule is that even though you're doing that, you are now bringing it to light and will undoubtedly spur a lawsuit where you now have to not only pay what you paid voluntarily, but also the travel damages, the attorney's fees, the costs, the 5% monthly, that actually creates an incentive to sort of just keep on without, you know, sort of bury your head in the sand. And I think the proper incentive ought to be to do what S&C did for its employees here. They found the issue, they brought it, and they provided these payments to all of their workers voluntarily, and they had every incentive to do so because it meant they were putting to rest this issue. If the court has no further questions, thank you. Thank you very much. Appellant in reply. Thank you, Your Honors. I just want to address a few points that came up in argument today. First, I just want to make sure I fully address the jurisdictional question that Your Honor raised. So in the circuit court's decision dismissing this case with prejudice, it does say on page 825 of the record, it says the court grants the section 215 motion on this issue with prejudice. And that was relating to the trial court dismiss it on 2615 with prejudice? Yes, that's what it says here on page 825. The court, and that was based on the underpayment issue. The 2615 was not about the underpayment? Well, that seems to be how the circuit court understood it. So it is true that in paragraphs 18 and 22 of the plaintiff's complaint, plaintiffs alleged that there were these underpayments that S&C made, and then the court granted the 2615 motion on the face of the complaint with respect to those adjustment payments, mooting the claims. With respect to the 2619 motion, that motion pertained to whether the bonuses were measured by or dependent on hours worked. The affidavit they submitted by A'Reilly Richards, one of the paragraphs of that affidavit stated that the bonuses were not measured by or dependent on hours worked, but the circuit court determined that that was a legal conclusion and struck that portion of the affidavit on that basis and denied the motion to dismiss on section 2619. So they were flipped from what I thought? It appears that way. Is that how the appellate court looked at it? I don't know that the appellate court specifically parsed out which, that really got dug into that issue in a nuanced way. But I'm happy to roll up my sleeves and dig into it further and submit a supplemental brief if that would be the court's preference. Okay. Turning now to this comparison by S&C to the Fair Labor Statement. I'm reading the appellate court opinion. They do it the other way. They say in the appellate court opinion that the 2619 was under the underpayment and the 2615 was about the regular rate. I believe that's correct. In any case, we'll parse it out eventually. Okay. Unless there's additional questions. And so we just want to affirm that there is a jurisdiction in this matter, that the appellate court had jurisdiction, this court has jurisdiction to decide these crucial issues. Turning now to S&C's comparison to the FLSA's regulations. The logical conclusion comparing the FLSA's gift exclusion to the Illinois minimum wage law's gift exclusion is that the Illinois Department of Labor intended to make some improvement on the language, perhaps by making it more concise, but without changing the meaning or the scope of the gift exclusion. It is not reasonable to infer some intention on the part of the Illinois Department of Labor to radically change the scope of the gift exclusion based on these very minor wording changes. That is especially true here where the Illinois Department of Labor has spoken directly to this court and informed it on how it interprets the gift exclusion. The Illinois Department of Labor is the agency that drafted and enacted the gift exclusion, and it has submitted not one but two very thorough and thoughtful amicus briefs articulating its interpretation of that provision as being limited to sums in the nature of gifts. And certainly the department does not take lightly, be it that all the time and resources put into presenting those interpretations before this court. I have a question to respond to the argument about what is a gift. What does that mean? Are we looking at an intent? How do we figure out what a gift is or not? Counsel says it's defined in the statute and that based on that definition we get to the same place. Well, I think that the scope of what is encompassed by a gift, even if the court is concerned that the borders of that could be fuzzy, that's not really at issue before this court. Regardless of how this court interprets sums not based on hours worked, the exclusion for gifts is still present in the regulatory provision. And so that will be excluded either way. I think the regulation attempts to shed light on what a gift is. It says it could be a gift made at holidays. It says that it could be, you know, it would be certainly something that's not measured by or dependent on hours worked. And so those are some objective indicators of what would qualify as a gift. You know, we have made some points about the plain language meaning of what a gift is in our briefs that certainly if, as S&C has done here, if you announce certain performance metrics in advance, you receive your employee's labor under the promise that you're going to compensate for satisfying those performance metrics and then you give them that bonus at the end after they've satisfied the performance metrics. And no universe is that a gift because the employer has received the value in exchange for providing that payment. Lastly, I just want to touch on this issue about the conversion to an hourly rate of different types of non-hourly payments. So in section 210.420B, and I'll flip to it just so I can see where it is. I'll flip to it just so I can make sure that I get the language right. It says the Act does not require employers to pay employees on an hourly rate basis. Their earnings may be determined on a piece rate, salary, commission, or some other basis. But in such case, the overtime pay due must be computed on the basis of the hourly rate derived from such earnings. Or some other basis would certainly include the production bonuses at issue here. Just like piece rate pay, just like salary pay, just like a commission, just like per job pay, the bonuses at issue here would need to be converted to their hourly equivalent. So if a piece rate pay, salary pay, and commission pay all become measured by or based on hours worked, simply by virtue of that conversion, well, that rule proves too much. Because that would mean that the bonuses at issue here would also be converted to an hourly rate by doing that conversion. And in fact, in that affidavit that the defendant submitted in the circuit court, the affidavit of O'Reilly Richards, she describes the process of making the adjustment payments as doing exactly that, as calculating what was the period of time that these bonuses applied to, how many hours were worked, what is the per hour equivalent of these bonuses, and then multiplied it by 1.5. And that's where they got those adjustment payments. So SNC knows how to make these conversions, not just for piece rate work or commission work, but also for these types of incentive bonuses at issue here. And unless the court has any other questions, I'll rest on our briefs. Thank you. Thank you very much, counsel. In this case, agenda number 14, 129-526, Mercado et al. v. SNC Electric Company will be taken under advisement. Thank you very much for your arguments.